# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Detention of PAUL HARELL.

STATE OF WASHINGTON,

　　　　　　　Respondent,

　　v.

PAUL HARELL,

　　　　　　　Appellant.

No. 76137-4-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 6, 2018

SCHINDLER, J. — A jury found Paul Harell continues to suffer from the mental abnormality of other specified paraphilic disorder, nonconsensual sex, that causes serious difficulty in controlling his sexually violent behavior, and the mental abnormality continues to make him likely to commit predatory acts of sexual violence unless confined to a secure facility. Harell seeks reversal. Harell argues the court erred in denying his motion to exclude the State expert from testifying that antisocial personality disorder and alcohol abuse disorder are risk factors that affect his ability to control himself. We affirm.

## FACTS

### Sexually Violent Offenses

In 1988, 16-year-old Paul Harell forcibly raped his 18-year-old sister. The State charged Harell with attempted rape but later dismissed the charge.

In 1991, Harell enlisted in the United States Navy. Harell was stationed at the Whidbey Island Naval Air Station. In November 1992, Harell forcibly raped 15-year-old T.W. The State charged Harell with rape in the third degree. Because T.W. declined to testify at trial, the State dismissed the charge.

In December 1992 while "peeping" through a ground level apartment window, Harell saw A.M. lying on the couch in her living room. Harell covered his face with a pair of nylons and entered the apartment through the back door. Harell turned off the power, unplugged the phone, and grabbed a knife from the kitchen. Harell went into the living room, "put [his] hand over [A.M.]'s mouth," pointed the knife at her neck, and raped her. Harell planned to rape A.M. again but fled after he heard someone at the front door.

In June 1993, Harell watched through an outside window as a couple had sex in their living room. Harell masturbated while he watched. Harell returned a week later and entered the house through a window. Harell put nylons over his face and grabbed a knife from the kitchen. As he walked through the house, Harell saw an infant sleeping in a crib. Harell walked into the bedroom where K.C. was lying on the bed. Harell got in the bed and started "kissing and fondling" her. Harell noticed a small child was also asleep in the bed. Harell "brandished the knife" and told K.C. that someone was in the other room with the infant. Harell took off K.C.'s clothes and raped her.

About a week later after leaving a party where he had been drinking, Harell saw an open garage and decided to commit a robbery. Harell found a "broken bayonet" in the garage and entered the house. He grabbed a "pair of stockings" from a hamper in the laundry room to put over his face. Seventeen-year-old M.V. was lying on a bed.

Harell displayed the bayonet and told M.V. to take off her clothes. When M.V. resisted, Harell ripped off her underwear, raped her, and forced her to perform oral sex on him. The police arrested Harell.

Harell admitted he raped M.V. but denied that he raped A.M. and K.C. Harell's DNA[1] profile matched the DNA of the person who raped A.M. and K.C. Harell pleaded guilty to one count of rape in the first degree and two counts of rape in the second degree. The court sentenced Harell to 194 months.

Sexually Violent Predator Petition

Before his scheduled release in 2009, the State filed a petition and certification of probable cause alleging Harell is a sexually violent predator.

Dr. Harry Goldberg evaluated Harell. In May 2009, Dr. Goldberg issued a 43-page "Sexually Violent Predator Evaluation." Dr. Goldberg diagnosed Harell with "Paraphilia, Not Otherwise Specified (NOS), nonconsensual sex"; alcohol abuse disorder; and antisocial personality disorder. Dr. Goldberg concluded, "[P]araphilia in combination with [Harell's] antisocial personality and alcohol abuse problem affects his emotional and volitional capacity," and his personality disorder and alcohol abuse "exacerbate his paraphilia." Dr. Goldberg states, "In my opinion, Mr. Harell meets the criteria as a Sexually Violent Predator as described in [chapter] 71.09 [RCW]."

Sexually Violent Predator Commitment

In 2011, the court entered a "Stipulation to Civil Commitment as a Sexually Violent Predator and Order Authorizing Conditional Release to Less Restrictive Alternative" (Stipulation). The Stipulation states Harell agrees to the findings in the

---

[1] Deoxyribonucleic acid.

3

certification of probable cause and the May 2009 Sexually Violent Predator Evaluation by Dr. Goldberg. The Stipulation states Harell "has been convicted of three sexually violent offenses as . . . defined in RCW 71.09.020(17)." Harell agreed he "currently suffers from Paraphilia Not Otherwise Specified (nonconsensual sex), Antisocial Personality Disorder, and Alcohol Abuse as those conditions are defined in the Diagnostic and Statistical Manual of Mental Disorder, Fourth Edition, Text Revision."[2] Harell also agreed paraphilia not otherwise specified, nonconsensual sex, is a mental disorder that "causes him to have serious difficulty controlling his sexually violent behavior" and "makes him more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility." The court entered an order that Harell is a sexually violent predator (SVP) and committed him to the custody of the Department of Social and Health Services (DSHS). The order authorized the less restrictive alternative (LRA) of community based treatment and conditions.

Harell engaged in community based treatment with Dr. Michael O'Connell for approximately nine months. When Harell violated the terms of the LRA order, DSHS revoked the community based LRA. Harell continued to "engage in treatment" at the Special Commitment Center (SCC).

In 2014, the State agreed to transfer Harell to the King County Secured Community Transitional Facility (SCTF). Harell resumed treatment with Dr. O'Connell.

In February 2016, Harell filed a petition for an unconditional release trial to determine whether he continues to meet the SVP criteria. Harell submitted the January 2016 report prepared by Dr. Brian Abbott. The court found, "Dr. Abbott's report of

---

[2] AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS: DSM-IV-TR (4th rev. ed. 2000).

4

Respondent's mental condition establishes probable cause to believe that Respondent's condition has so changed that he no longer meets the definition of a sexually violent predator." The court scheduled an unconditional release trial. Dr. Goldberg evaluated Harell again and in May 2016, issued a report. During his deposition, Dr. Goldberg identified the mental abnormality as "Other Specified Paraphilic Disorder nonconsensual sex."

Unconditional Release Trial

The trial began in October 2016. Harell filed motions in limine. Motion in limine 10 asked the court to prohibit the State from arguing that any condition "other than 'Other Specified Paraphilic Disorder [(]nonconsensual sex)' constitutes Mr. Harell's mental abnormality." But defense counsel conceded the diagnosis of antisocial personality disorder and alcohol abuse disorder were relevant to "risk."

> THE COURT:     . . . I believe, [Defense Counsel] — If I'm incorrect, tell me — that you do not want the testimony to go into the other diagnosis?
> [DEFENSE COUNSEL]:    No. They can go into the other diagnosis.
>      . . . As far as [motion in limine] 10, what I'm suggesting is that the evidence that Dr. Goldberg presented in his deposition that the alleged mental abnormality is Other Specified Paraphilic Disorder only and that the other diagnoses that he makes, for example, alcohol dependency or alcohol abuse, I think it's now called, may affect Mr. Harell in terms of his ultimate risk.
>      But I don't want the State to suggest that alcohol abuse can now constitute a mental abnormality.

The attorney for the State told the court Dr. Goldberg would testify that personality disorder and alcohol abuse disorder affect volitional control and the likelihood of reoffense.

5

The court denied motion in limine 10. The court ruled the other diagnosis of personality disorder and alcohol abuse disorder is relevant "to the volitional capacity that affect the mental abnormality."

Defense motion in limine 16 requested the court "exclude evidence of Anti Social Personality Disorder and Alcohol Abuse Disorder." Harell argued evidence of antisocial personality disorder and alcohol abuse disorder is not relevant to whether "Other Specified Paraphilic Disorder continues to . . . make [Harell] likely to commit predatory acts of sexual violence." The State argued the "other diagnoses of Antisocial Personal[ity] Disorder and Alcohol Use Disorder . . . are relevant" to "future risk." The court denied the motion to exclude evidence of antisocial personality disorder and alcohol abuse disorder.

A number of witnesses testified during the seven-day trial, including Dr. Goldberg, SCTF residential rehabilitation counselor Leroy Mack, Harell, and Dr. O'Connell. Harell did not call Dr. Abbott to testify at trial. The court admitted into evidence a number of exhibits, including the 2011 Stipulation to Civil Commitment as a Sexually Violent Predator and Order Authorizing Conditional Release to Less Restrictive Alternative.

Dr. Goldberg testified about the 2009 and 2016 evaluations. Dr. Goldberg said Harell is "always cooperative" and "motivated" to say what is "really on his mind." Harell told Dr. Goldberg that in 2014, he was aroused by "deviant thought" about one of his victims. Harell admitted he "will always" be attracted to coercive sex but he was "sincerely motivated to not reoffend." Harell conceded, "[S]ignificant stressors would increase the sexual desires," and acknowledged "risk factors." Harell told Dr. Goldberg

his risk factors include peeping, and the use of alcohol "decreases his inhibitions." Harell admitted a "risk to reoffend" if he "became hurt or angry with himself" or if he "became moody or secretive." Harell acknowledged "anger" is "a trigger for him, . . . especially . . . if women were making him angry." Harell told Dr. Goldberg that "if he was feeling he was unable to cope" or "was feeling overwhelmed," he would start looking at "pornographic materials" and "engage in voyeuristic behaviors." Dr. Goldberg testified that Harell "did not believe" he had a "sexual disorder."

Dr. Goldberg diagnosed Harell with "Other Specified Paraphilic Disorder, Alcohol Use Disorder, and Antisocial Personality Disorder." Dr. Goldberg testified "paraphilia" is "an intense, . . . recurrent sexual interest." Dr. Goldberg testified paraphilia is not "curable" and is "[l]ifelong." Dr. Goldberg explained that other specified paraphilic disorder "nonconsensual sex" means "an attraction to having sex with someone who is not consenting to the sexual behavior." Dr. Goldberg testified Harell "fits the criteria" for other specified paraphilic disorder, nonconsensual sex; and other specified paraphilic disorder, nonconsensual sex, "constitutes a current mental abnormality." Dr. Goldberg testified the mental abnormality "causes [Harell] serious difficulty in controlling his sexually violent behavior."

> [I]f he's out in the community and he's stressed and he's angry, . . . this might lead him into thinking about women. He talks about — about nonconsensual sex with women. Might think- might trigger him to get involved in peeping behavior. And this could lead to sexually violent behavior, as it has in the past.
>  . . . .
>  . . . [H]e continues to have difficulty controlling his emotions at times. He recognizes that that's one of the triggers for engaging in this offense cycle from starting all over again.

Dr. Goldberg testified that Harell's mental abnormality of other specified paraphilic disorder, nonconsensual sex, is the "primary disorder." But his antisocial personality disorder "interplay[s]" with the mental abnormality and "some of those antisocial personality traits exacerbate the paraphilic disorder." Dr. Goldberg testified the antisocial personality disorder means Harell does not "conform to social norms," has "impulsive personality traits," is "deceitful," and demonstrates "[r]eckless disregard," "[i]rritability," and "aggressiveness." Dr. Goldberg testified, "[S]omebody who has an Antisocial Personality Disorder, when in combination with the Paraphilic Disorder, then they have some other traits that make the Paraphilic Disorder more likely to be expressed."

Dr. Goldberg testified the use of alcohol is "more of a risk factor" because "using alcohol . . . would decrease his inhibitions." Dr. Goldberg testified that "even without the alcohol component," Harell has "serious difficulty in controlling his sexually violent behavior" because "he has acted out in a nonconsensual sexual manner without the assistance of alcohol."

SCTF rehabilitation counselor Mack testified that Harell is "more argumentative than most residents." Mack said Harell "seems to resist directions" and has "negative responses." Mack testified Harell could be "combative or belligerent." Mack said, "I'd say over half the times he's asked to do something he doesn't like to do, he has a negative response to it."

Harell admitted he raped his sister, T.W., A.M., K.C., and M.V. Harell testified he had his "first drink . . . [b]efore I was 9-years old." Harell said alcohol "turn[ed] into

8

something that was . . . a long-term issue in [his] life" and he "came to the conclusion that [he is] an alcoholic" while he was in prison.

Harell testified that he began "peeping" off-and-on when he was 14-years-old. Harell said, "I would go out [at] night and look in people's windows. And if I saw, you know, women in any different stages of undress or sexual encounters with a person, I would watch. Then at times masturbate to it." Harell said he started peeping again after he raped T.W. because of "[f]rustrations" with his girlfriend and "living arrangements." Harell testified that "sexual frustrations led [him] to seek . . . an outlet" because he was "already using pornography" and "[t]hat wasn't sufficient."

Dr. O'Connell testified that Harell has "persistent negative emotionality" that "primarily refer[s] to anger issues" that are "dynamic risk factors."

> [T]he source of the problem is the negative emotionality. And if it gets to the point . . . of entitlement, then it becomes more of a problem because he acts out and does things that cause problems.

Dr. O'Connell testified that the "highest risk factors" to reoffend are "deviant sexual arousal and antisocial behavior. It isn't everything, but those are the two strongest ones. And if you have both of those, it increases risk of reoffense by a substantial amount." Dr. O'Connell said Harell is "not reporting" deviant arousal and is not "regularly . . . antisocial."

In closing argument, the attorney for the State argued, "The specific diagnosis here is . . . Other Specified Paraphilic Disorder. . . . 'Paraphilic' means sexually related. It's a disorder. . . . And it's related to nonconsensual sex. And right now it's in a controlled environment." The State argued the antisocial personality disorder and "antisocial traits" are "[f]actors that contribute to risk." The State presented PowerPoint

9

slides identifying the "Mental Abnormality" as the "Specific Diagnosis" of "Other Specified Paraphilic Disorder, nonconsensual sex." Consistent with the evidence at trial, a separate slide identifies "Personality Disorder" and "Alcohol Use Disorder" as "Factors Contributing to risk."

The defense attorney argued the State did not prove beyond a reasonable doubt that Harell suffers from other specified paraphilic disorder because he does not have "this disorder anymore" and "doesn't experience intense and recurrent sexually arousing fantasies and urges." Defense counsel argued that Harell's negative emotionality is not a strong factor for recidivism, and there is "no proof beyond a reasonable doubt to suggest that [Harell] is so emotionally dysregulated . . . that he's more likely than not to rape."

In rebuttal, the State reiterated the "diagnosis of Other Specified Paraphilic Disorder, Nonconsensual Sex," is "the mental abnormality that causes Mr. Harell serious difficulty controlling his sexual behavior." The attorney argued, "It's a congenital or acquired condition affecting his emotional or volitional capacity which predisposes him to commit sexual acts in the future." The State noted Dr. Goldberg testified about risk factors and the "interplay" of the "current diagnoses" of "the Antisocial Personality Disorder and the Alcohol Use Disorder and how it affected Mr. Harell's future risk." The State pointed out that Dr. Goldberg also "took into account Mr. Harell's own statements. Mr. Harell doesn't recognize he has a mental disorder. He acknowledges that he has an attraction to coercive sex that will never remit." The State argued, "[T]he evidence demonstrates that Mr. Harell's mental abnormality makes him more likely to engage in predatory acts of sexual violence in the future if not confined to a secured facility."

The jury found the State proved beyond a reasonable doubt that Harell continues to suffer from the mental abnormality of other specified paraphilic disorder, nonconsensual sex, that causes serious difficulty in controlling his sexually violent behavior, and the mental abnormality continues to make him likely to commit predatory acts of sexual violence unless confined to a secure facility. The court entered an order of commitment. Harell appeals.

## ANALYSIS

Harell contends the court erred in denying his motion to exclude evidence of antisocial personality disorder and alcohol abuse disorder. Harell argues the only question at trial was whether he continues to suffer from the mental abnormality of other specified paraphilic disorder, nonconsensual sex.[3]

Harell concedes jury instruction 5 correctly states the burden of proof for unconditional release. Jury instruction 5 states:

> To establish that Paul Harell continues to be a sexually violent predator, the State must prove each of the following elements beyond a reasonable doubt:
> (1) That Paul Harell was previously found to be a sexually violent predator;
> (2) That Paul Harell continues to suffer from a mental abnormality which causes him serious difficulty controlling his sexually violent behavior; and
> (3) The mental abnormality continues to make Paul Harell likely to commit predatory acts of sexual violence unless confined to a secure facility.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict that Paul Harell continues to be a sexually violent predator.
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any of one or more of these elements, then it will

---

[3] We reject the State's argument under RAP 2.5(a) that Harell did not preserve the argument he makes on appeal. Harell argued below that evidence of antisocial personality disorder and alcohol abuse disorder is not relevant to whether Harell has a mental abnormality that continues to make him likely to commit predatory acts of sexual violence.

be your duty to return a verdict that Paul Harell is no longer a sexually violent predator.

Harell does not dispute he was previously found to be an SVP. Nor does he dispute that he continues to suffer from the mental abnormality of other specified paraphilic disorder, nonconsensual sex, that causes him serious difficulty to control his sexually violent behavior. Harell claims the statute and the burden of proof jury instruction precluded admission of evidence of antisocial personality disorder and alcohol abuse disorder as not relevant to prove he is likely to reoffend. Because the diagnosis of antisocial personality disorder and alcohol abuse disorder is relevant to whether the mental abnormality makes Harell more likely to engage in predatory acts of sexual violence, we disagree with his argument. Mental abnormality and personality disorder are alternative means of proving that a person continues to meet the definition of an SVP. In re Det. of Halgren, 156 Wn.2d 795, 810, 132 P.3d 714 (2006).

An individual civilly committed as an SVP is entitled to an unconditional release trial if he shows probable cause that his condition has so changed that he "no longer meets the definition of a sexually violent predator." RCW 71.09.090(2)(a)(i). The State has the burden to prove beyond a reasonable doubt that the individual "continues to meet the definition of a sexually violent predator." RCW 71.09.090(3)(c). To establish Harell continues to meet the SVP definition, the State must prove beyond a reasonable doubt that (1) Harell has been "convicted of or charged with a crime of sexual violence," (2) he "suffers from a mental abnormality or personality disorder," and (3) the mental abnormality or personality disorder makes him more "likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.090(3)(c), .020(18); see also In re Det. of Belcher, 189 Wn.2d 280, 288-89, 399 P.3d 1179 (2017).

The third element, whether the mental abnormality or disorder makes Harell more likely to engage in predatory acts of sexual violence if not confined in a secure facility, is "a compound determination." In re Det. of Post, 170 Wn.2d 302, 310, 241 P.3d 1234 (2010). The jury must find "both causation (i.e., the abnormality or disorder causes the likelihood of future acts), and that 'the probability of the defendant's reoffending exceeds 50 percent.' " Post, 170 Wn.2d at 310[4] (quoting In re Det. of Brooks, 145 Wn.2d 275, 298, 36 P.3d 1034 (2001), overruled on other ground by In re Det. of Thorell, 149 Wn.2d 724, 753, 72 P.3d 708 (2003)). "The State must prove not only that a crime occurred, but that the SVP continues to suffer from a mental abnormality and that he or she would likely reoffend if released from confinement." Belcher, 189 Wn.2d at 290.

We review evidentiary decisions for abuse of discretion. Post, 170 Wn.2d at 309. A trial court abuses its discretion if its decision is manifestly unreasonable or based upon untenable grounds or reasons. Post, 170 Wn.2d at 309. Relevant evidence is admissible. ER 402. Evidence is "relevant" if the evidence makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. But the court can exclude relevant evidence if the danger of unfair prejudice substantially outweighs the probative value. ER 403.

In an SVP trial, "evidence is relevant only if it increases or decreases the likelihood that a fact exists that is consequential to the jury's determination whether the respondent is a sexually violent predator." In re Det. of West, 171 Wn.2d 383, 397, 256

---

[4] Citation omitted.

P.3d 302 (2011). "Because relevance is a judgment dependent on the surrounding facts, the trial court enjoys broad discretion in deciding whether evidence is relevant to" the three elements that define an SVP under RCW 71.09.020(18). West, 171 Wn.2d at 397.

The diagnosis of antisocial personality disorder and alcohol abuse disorder is relevant to the third element and the risk of reoffense. In Audett, the Washington Supreme Court held the State proved beyond a reasonable doubt that Audett was more likely to engage in predatory acts if not confined in a secure facility because his mental abnormality caused " 'serious difficulty controlling . . . behavior.' " In re Det. of Audett, 158 Wn.2d 712, 728, 147 P.3d 982 (2006)[5] (quoting Thorell, 149 Wn.2d at 745). Experts for the State and Audett testified he was diagnosed with pedophilia, a mental abnormality or personality disorder within the meaning of the statute. Audett, 158 Wn.2d at 727-28. In addressing whether the State proved likelihood of reoffense, the court cites the testimony of "both experts" and the evidence of Audett's inability to control his alcoholism as "a significant additional factor contributing to his risk of reoffense, as was his lack of knowledge regarding his offending patterns." Audett, 158 Wn.2d at 729.

In In re Detention of Sease, 149 Wn. App. 66, 79, 201 P.3d 1078 (2009), Sease argued the State must establish " 'a risk to reoffend which stems from a mental disorder.' " Sease asserted the State did not prove he had a current personality disorder that made him more likely to reoffend. Sease, 149 Wn. App. at 79. Because the experts testified Sease suffered from borderline personality disorder and antisocial

---

[5] Alteration in original.

personality disorder, we concluded the evidence established Sease "suffered from at least one personality disorder." Sease, 149 Wn. App. at 79-80. The State's expert also testified that his "borderline and antisocial personality disorders, combined with the risk factors of alcohol dependency and narcissistic personality disorder, caused Sease to be more likely to reoffend if he was not confined to a secure facility." Sease, 149 Wn. App. at 79-80. We held the State proved beyond a reasonable doubt that Sease "suffers from a mental illness that makes him more likely to engage in predatory acts of sexual violence if he is not confined to a secure facility." Sease, 149 Wn. App. at 80.

Relying on Thorell, Harell contends that admitting evidence of the other diagnoses "severs the constitutionally required link between mental illness and risk of sexually violent reoffense." We disagree.

In Thorell, the respondent was diagnosed with borderline personality disorder, antisocial personality disorder, narcissistic personality disorder, and alcohol dependence. Thorell, 149 Wn.2d at 760. The court held the State is required to establish "a link between a mental abnormality and the likelihood of future acts of sexual violence," but a mental abnormality alone does not prove "serious lack of control" and "serious risk of future sexual violence." Thorell, 149 Wn.2d at 743, 761-62.

> [A] diagnosis of a mental abnormality or personality disorder is not, in itself, sufficient evidence for a jury to find a serious lack of control. Such a diagnosis, however, when coupled with evidence of prior sexually violent behavior and testimony from mental health experts, which links these to a serious lack of control, is sufficient for a jury to find that the person presents a serious risk of future sexual violence and therefore meets the requirements of an SVP.

Thorell, 149 Wn.2d at 761-62; see also Belcher, 189 Wn.2d at 293 ("[T]here is no particular diagnosis that renders someone an SVP. Rather, it is a finding that a

person's diagnosis affects his or her ability to control his or her actions and thereby renders him or her a danger if not confined.").[6]

Here, evidence of antisocial personality disorder and alcohol abuse disorder was relevant to show risk of reoffense. Dr. Goldberg testified that the antisocial personality disorder, by itself, did not pose a risk that Harell would "commit future sexual crimes." Dr. Goldberg said antisocial personality disorder "interplay[s]" with and "exacerbate[s]" the paraphilic disorder, which makes it more likely to be expressed." Dr. Goldberg testified that antisocial personality traits increase Harell's risk of reoffense. Dr. O'Connell also testified that the "highest risk factors" for reoffense are "deviant sexual arousal and antisocial behavior."

Harell also argues evidence of alcohol abuse disorder is not relevant because it is not a mental abnormality or a personality disorder. Dr. Goldberg did not testify that alcohol abuse disorder was either a mental abnormality or a personality disorder. As noted, Dr. Goldberg testified that alcohol abuse disorder was a contributing factor to Harell's future risk of sexually violent behavior. Dr. Goldberg testified that alcohol lowered Harell's inhibitions and was a "risk factor" to reoffend.

The court did not abuse its discretion in denying the motion to exclude evidence of antisocial personality disorder and alcohol abuse disorder that causes Harell serious difficulty to control his behavior and makes him "likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18); see Halgren, 156 Wn.2d at 810 (mental abnormalities and personality disorders may "work in conjunction" to make one more likely to reoffend).

---

[6] Citation omitted.

16

We affirm the jury finding Harell continues to suffer from the mental abnormality of other specified paraphilic disorder, nonconsensual sex, that causes serious difficulty in controlling his sexually violent behavior, and the mental abnormality continues to make him likely to commit predatory acts of sexual violence unless confined to a secure facility.

WE CONCUR: