# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Detention of:<br><br>JOHN BREWER,<br><br>       Appellant. | No.  59332-7-II<br><br>UNPUBLISHED OPINION |

LEE, J. — John Brewer appeals the trial court's order authorizing his commitment as a sexually violent predator (SVP) pursuant to chapter 71.09 RCW.  Brewer argues that the evidence was insufficient to prove, beyond a reasonable doubt, that he is likely to engage in predatory acts of sexual violence if not confined in a secure facility.

We hold that there was sufficient evidence to show that Brewer is likely to engage in predatory acts of sexual violence if not confined in a secure facility to support his commitment as an SVP.  Therefore, we affirm.

## FACTS

In 2017, Brewer pleaded guilty to one count of second degree child molestation against 7-year-old, C.W.  He also pleaded guilty to one count of attempted first degree kidnapping and one count of attempted second degree kidnapping.  On June 7, 2022, the State filed a petition seeking involuntary civil commitment of Brewer as an SVP pursuant to chapter 71.09 RCW.

A bench trial on the State's petition took place in January 2024.  In addition to presenting evidence related to Brewer's conviction, the State presented testimony from Dr. Nathaniel Burt and Dr. Marianne Davis.

A.      DR. BURT'S TESTIMONY

Dr. Nathaniel B. Burt is a psychologist at the Department of Corrections (DOC) and evaluated Brewer to determine treatment needs. Dr. Burt testified that in July 2020, he prepared a report related to Brewer's mental health because of Brewer's issues with hyperarousal.

Brewer reported having fantasies about C.W., thinking about her, and masturbating to thoughts of her. Brewer told Dr. Burt that he was masturbating approximately three times a day to fantasies about C.W., as well as fantasies of up to 16 victims for which he was not charged. Dr. Burt explained that Brewer had gained access to young children by befriending their parents.

Brewer also stated that he believed children could consent to sexual contact. Dr. Burt explained that Brewer struggled to understand why a child could not consent.

In September 2021, Dr. Burt conducted a brief psychological cognitive evaluation of Brewer. The cognitive evaluation looked at overall intellectual and cognitive functioning, such as memory, attention, focus, and capacity to learn and process information. Dr. Burt conducted two assessments: the Wechsler Abbreviated Scale of Intelligence (WASI-II) and the Repeatable Battery for the Assessment of Neuropsychological Status (RBANS). Dr. Burt clarified that he only conducted brief assessments rather than full batteries of tests because the purpose of his assessments was to determine treatment needs.

The WASI-II is an intellectual test that examines verbal comprehension and perceptual reasoning. Dr. Burt testified that Brewer's total IQ score was 67, placing him in "the extremely low range" of the intelligence quotient. 3 Verbatim Rep. of Proc. (VRP) (Jan. 18, 2024) at 306. He explained that a score of 70 or lower is considered "intellectual disability mild." 3 VRP (Jan. 18, 2024) at 306. On the verbal comprehension index, Brewer scored a 77, which was in the

borderline range. Brewer's perceptual reasoning score was 60, which was in the extremely low range.

The RBANS is a cognitive test measuring visual and spatial processing, short- and long-term memory, some language abilities, and attention. Brewer's visual and spatial construction index on the RBANS was consistent with his perceptual reasoning score on the WASI-II. Brewer's short-term memory was below average. Brewer's long-term memory and language abilities were in the borderline range. And Brewer's score for the attention index fell within the extremely low range.

Based on these tests, Dr. Burt concluded that Brewer struggled with verbal and nonverbal reasoning and processing, as well as with attention and delayed memory.

B.      DR. DAVIS' TESTIMONY

Dr. Marianne Davis is an SVP evaluator who conducted two evaluations of Brewer. Dr. Davis testified that in her opinion, Brewer suffered from two mental abnormalities that seriously impair his ability to control his sexually violent behavior. And Dr. Davis concluded that Brewer's mental abnormalities made it likely that he would engage in predatory acts of sexual violence if not confined in a secure facility.

1.      Mental Abnormalities

Dr. Davis diagnosed Brewer with pedophilic disorder and other specified paraphilic disorder—arousal to coercion.

In diagnosing Brewer with pedophilic disorder, Dr. Davis relied on records relating to his conviction for molesting C.W. and records in which Brewer acknowledged molesting other

children and maintaining "an ongoing and intense sexual attraction to children." VRP (Jan. 22, 2024) at 35.

Beyond molesting C.W., Brewer made several disclosures involving prepubescent children, including:

> "I was 29, the victim was 4. The victim was female. I knew her for about six months. I put my finger in her vagina and I also ate her vagina."
>
> . . . .
>
> . . . "I was 31, the victim was 6. The victim was male. I raped him with my penis in his butt."
>
> . . . .
>
> . . . "I was 31, the victim was 2. The victim was a female. I ate her vagina and then [digitally penetrated] her vagina."
>
> . . . .
>
> . . . "I was 30, the victim was [8] . . . . The victim was female. I put my finger in her vagina and then put my penis in her vagina."

VRP (Jan. 22, 2024) at 44, 45,46. Dr. Davis considered these disclosures as part of her diagnosis. Additionally, Dr. Davis relied on Brewer's statements in August 2023 that he fantasized about C.W. repeatedly. And Brewer "admitted to continuing to have sexual fantasies and urges to engage in sexual contact with children." VRP (Jan. 22, 2024) at 52.

As to the other specified paraphilic disorder diagnosis, Dr. Davis relied on Brewer's disclosure that he was sexually aroused by having power and control over his victims. Dr. Davis explained that Brewer had previously acknowledged he masturbated to violent fantasies about children.

In addition, Dr. Davis testified that Brewer was intellectually low functioning. She explained that he exhibited memory deficits. According to Dr. Davis, "there are certainly indications that [Brewer] met the criteria for intellectual disorder." VRP (Jan. 22, 2024) at 63.

Dr. Davis also diagnosed Brewer with antisocial personality disorder. In determining that Brewer had antisocial personality disorder, Dr. Davis relied on Brewer's criminal history, his history of lying, his violation of several rules while in the DOC, his verbal aggression in the DOC and SCC, and his challenges maintaining employment. Dr. Davis also explained that Brewer's emotional and volitional controls are impaired because his antisocial personality disorder interacts with his pedophilic disorder and other specified paraphilic disorder.

Based on the evaluation results, Dr. Davis concluded that Brewer suffers from mental abnormalities that impair his ability to control his sexually violent behavior.

2.      Risk of Engaging in Predatory Acts

To determine Brewer's risk of engaging in predatory acts of sexual violence if not confined in a secure facility, Dr. Davis conducted a four-part assessment: (1) she examined Brewer's actuarial risk, (2) she analyzed Brewer's dynamic risk, (3) she considered whether any protective factors were present, and (4) she analyzed case-specific factors.

a.      Actuarial risk

Dr. Davis examined Brewer's risk using two actuarial instruments: the Static-99R and the Static-2002R. These instruments examine an individual's relative risk and projected recidivism rates. The Static-99R is based on both charges and convictions whereas the Static-2002R is based on convictions only. Dr. Davis used both instruments to ensure they were consistent, and she concluded that they were.

Brewer's total score on the Static-99R was a 6. This score fell in the "well-above average range" and in the 94th percentile. VRP (Jan. 22, 2024) at 103. Based on the Static-99R test result, compared to a group of routine sex offenders, Brewer's rate of re-offense was 3.8 times higher than the average sex offender. The projected 20-year estimate of re-offense was 45 percent.

Brewer scored a 7 on the Static-2002R. This score fell within the "well-above average" risk category and in the 93rd percentile. VRP (Jan. 22, 2024) at 106. Offenders with Brewer's score re-offend at a rate of 6 times higher than the average sex offender.

> b. Dynamic risk

To examine Brewer's dynamic risk, Dr. Davis used the Stable-2007. The Stable-2007 examines an individual's dynamic factors, or areas of vulnerability. Dr. Davis used the results of the Stable-2007 to compare Brewer to the high-risk category of offenders in determining his actuarial risk.

Dr. Davis acknowledged that the Stable-2007 may have limitations when applied to developmentally delayed individuals. Specifically, Dr. Davis explained that in the original sample on which the instrument was developed, 50 out of 1,000 individuals were developmentally delayed. The creators of the Stable-2007 found that the instrument predicted general and violent recidivism but not sexual recidivism for the developmentally delayed individuals. Accordingly, the Stable-2007 scoring manual advised users to "use caution when administering to an individual with significant developmental delays." VRP (Jan. 22, 2024) at 109. Dr. Davis did not know how the developers of the instrument defined "significant" developmental delays. 4 VRP (Jan. 23, 2024) at 495.

However, Dr. Davis believed that the Stable-2007 was appropriate in examining Brewer's dynamic risk for several reasons. First, she explained that the data was over 20 years old and that no other studies on the Stable-2007 had found a similar effect. Second, the scoring manual merely offers a cautionary note when administering to an individual with significant developmental delays. Third, Dr. Davis explained that a meta-analysis published in 2019 examined around 7,000 subjects and did not report any issues using the instrument with developmentally delayed subjects. Instead, the meta-analysis found that the Stable-2007 was predictive of sexual recidivism. Thus, Dr. Davis "disput[ed] that the Stable-2007 does not predict for those with developmental disabilities." 4 VRP (Jan. 23, 2024) at 496 (some capitalization omitted). And Dr. Davis explained that based on Brewer's IQ of 67 and his childhood IQ of 57, she believed he had only a "mild developmental disability." 4 VRP (Jan. 23, 2024) at 495.

Examining Brewer's dynamic risk with the Stable-2007, Dr. Davis determined that Brewer's score was a 20 out of 26, which was in the high range at the 99th percentile compared to a routine sample of sex offenders. Based on Brewer's Stable-2007 score, Dr. Davis compared Brewer to the high-risk category of offenders when calculating his scores on the Static-99R and the Static-2002R.

c.      Protective factors

Dr. Davis identified three protective factors that may limit risk: (1) being sex offense-free in the community for a particular period of time, (2) being of an advanced age or unable to sexually reoffend in the same way by reason of ill health, and (3) completing a sex offender treatment program. Dr. Davis testified that no protective factors applied to Brewer.

> d.      Case-specific factors

Finally, Dr. Davis considered Brewer's uncharged victims as a case-specific factor. Brewer disclosed that he had multiple uncharged victims. Because the offenses against the additional victims were uncharged, they were not reflected in the actuarial instruments. Accordingly, Dr. Davis considered these offenses separately as "an indicative elevated risk." 4 VRP (Jan. 23, 2024) at 379.

Based upon her education, experience, and review of the case, Dr. Davis concluded to a reasonable degree of psychological certainty that Brewer was likely to engage in predatory acts of sexual violence if not confined in a secure facility.

## C.      CONCLUSION OF TRIAL

In the findings of fact and conclusions of law, the trial court found the diagnoses of pedophilic disorder and other specified paraphilic disorder to be credible and persuasive. The trial court found that Brewer's pedophilic disorder and other specified paraphilic disorder constitute mental abnormalities because they affect Brewer's emotional or volitional capacity. The trial court also found that Brewer's antisocial personality disorder interacts with his pedophilic disorder and his other specified paraphilic disorder, thus impacting his emotional and volitional control.

Further, the trial court found Dr. Davis credible when she explained that "Brewer's low IQ did not trigger the extreme caution instruction that applies to the use of the Stable[-]2007." Clerk's Papers (CP) at 158. In addition, the trial court found that "[Dr. Davis] appropriately used that tool as described in her report." CP at 158. And the trial court found that "Dr. Davis credibly opined that based on her risk assessment, Mr. Brewer's mental abnormality makes him likely to commit predatory acts of sexual violence if not confined in a secure facility." CP at 160.

Based on its findings, the trial court concluded that Brewer was an SVP under RCW 71.09.060. Accordingly, the trial court entered an order of commitment.

Brewer appeals.

ANALYSIS

Brewer does not challenge the trial court's findings that he had previously been convicted of second degree child molestation and that he suffers from mental abnormalities. Instead, Brewer argues that the State did not meet its burden of proving that he is a sexually violent predator beyond a reasonable doubt because the actuarial tools do not predict the likelihood of sexual recidivism for individuals with intellectual deficits. Brewer also argues that the trial court erred by relying on past acts in determining that Brewer had serious difficulty controlling his behavior. We disagree.

A.      LEGAL PRINCIPLES

To uphold an SVP commitment, there must be sufficient evidence to find the following elements beyond a reasonable doubt: (1) that Brewer has been convicted of or charged with a crime of sexual violence, (2) that he suffers from a mental abnormality or personality disorder, and (3) that such mental abnormality or personality disorder makes Brewer likely to engage in predatory acts of sexual violence if not confined in a secure facility. *In re Det. of Thorell*, 149 Wn.2d 724, 758-59, 72 P.3d 708 (2003), *cert. denied*, 541 U.S. 990 (2004); *In re Det. of Harell*, 5 Wn. App. 2d 357, 368, 426 P.3d 260 (2018), *review denied*, 192 Wn.2d 1019 (2019).

An individual is likely to engage in predatory acts of sexual violence if the individual "more probably than not will engage in such acts if released unconditionally from detention on the sexually violent predator petition." RCW 71.09.020(8). Whether the "'more probable than not'

9

standard" is met "depends on the facts underlying the SVP petition[,] . . . expert testimony," and "the statistical likelihood of reoffending." *In re Det. of Moore*, 167 Wn.2d 113, 124-25, 216 P.3d 1015 (2009).

Additionally, the third element "must be supported by proof beyond a reasonable doubt of 'serious difficulty controlling . . . behavior.'" *In re Det. of Audett*, 158 Wn.2d 712, 728, 147 P.3d 982 (2006) (alteration in original) (quoting *Thorell*, 149 Wn.2d at 745). And although a mental abnormality alone is not sufficient evidence to find a serious lack of control, such a diagnosis "'when coupled with evidence of prior sexually violent behavior and testimony from mental health experts, which links these to a serious lack of control, is sufficient for a jury to find that the person presents a serious risk of future sexual violence and therefore meets the requirements of [a sexually violent predator].'" *Id.* (alteration in original) (quoting *Thorell*, 149 Wn.2d at 761-62).

We treat sufficiency of the evidence challenges to SVP proceedings the same as sufficiency challenges in the criminal context. *Thorell*, 149 Wn.2d at 744. "In a sufficiency challenge, the evidence is viewed in the light most favorable to the State, and all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the respondent." *Audett*, 158 Wn.2d at 727 (citation omitted). "A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from it." *In re Det. of Belcher*, 196 Wn. App. 592, 608, 385 P.3d 174 (2016). "Circumstantial evidence and direct evidence are equally reliable." *Id.*

B.     LIKELIHOOD OF ENGAGING IN PREDATORY ACTS OF SEXUAL VIOLENCE

Brewer argues that the State did not present evidence that the actuarial tools reliably predict sexual recidivism for developmentally delayed individuals. Specifically, Brewer contends that

there was not sufficient evidence that he was likely to engage in predatory acts of sexual violence because the Stable-2007 did not reliably predict recidivism for individuals with intellectual deficits.

Here, while Dr. Davis agreed that evaluators should use caution when using the Stable-2007 on individuals with significant developmental delays, she opined that Brewer had only a "mild developmental disability." 4 VRP (Jan. 23, 2024) at 495. Further, Dr. Davis "disput[ed] that the Stable-2007 does not predict for those with developmental disabilities" based on the 2019 meta-analysis. 4 VRP (Jan. 23, 2024) at 496 (some capitalization omitted). Dr. Davis explained that the data was over 20 years old, and no other studies on the Stable-2007 found that the tool was ineffective in predicting sexual recidivism for people with developmental disabilities. In addition, Dr. Davis testified that she believed the Stable-2007 was an appropriate measure of Brewer's dynamic risk because a 2019 meta-analysis of 7,000 subjects found that the Stable-2007 was predictive of sexual recidivism without any reported issues with developmentally delayed subjects. Therefore, viewing the evidence and all reasonable inferences in a light most favorable to the State, Brewer's argument that there is insufficient evidence to show that the actuarial tools reliably predict sexual recidivism for developmentally delayed individuals fails.

Moreover, Dr. Davis' opinions were not based solely on the Stable-2007. The State presented additional evidence that Brewer is likely to engage in predatory acts of sexual violence. For example, Dr. Davis testified that Brewer suffers from pedophilic disorder and other specified paraphilic disorder, which seriously impair his ability to control his sexually violent behavior. Dr. Davis linked these abnormalities to Brewer's past acts of sexual violence related to C.W. and his numerous uncharged victims. Further, Dr. Davis explained that Brewer still fantasizes about his

victims. Dr. Davis concluded that Brewer's pedophilic disorder and other specified paraphilic disorder, combined with his antisocial personality disorder, impair his emotional and volitional controls. Finally, Dr. Davis explained that no protective factors lowered Brewer's risk and that Brewer's uncharged victims elevated his risk.

In light of the evidence presented, a rational trier of fact could have found beyond a reasonable doubt that Brewer was likely to engage in predatory acts of sexual violence if not confined in a secure facility. Accordingly, there was sufficient evidence to support Brewer's commitment as an SVP.

C.     RELIANCE ON PAST ACTS

Brewer argues that the trial court erred by relying on past acts in determining that Brewer had serious difficulty controlling his behavior. Brewer cites to *Thorell* to argue that prior acts are insufficient to prove current dangerousness absent evidence from a mental health expert tying these prior acts to a serious lack of control.

*Thorell* provides that a diagnosis of a mental abnormality, "when coupled with evidence of prior sexually violent behavior and testimony from mental health experts, which links these to a serious lack of control, is sufficient for a jury to find that the person presents a serious risk of future sexual violence and therefore meets the requirements of an SVP." 149 Wn.2d at 762. Here, Dr. Burt and Dr. Davis testified to Brewer's past acts in the context of their diagnoses and evaluations. Accordingly, this argument fails.

CONCLUSION

Because there was sufficient evidence to show that Brewer is likely to engage in predatory acts of sexual violence if not confined in a secure facility to support his commitment as an SVP, we affirm the trial court's order authorizing his commitment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, J.

Cruser, C.J.